## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DARRETT KING,

                Petitioner,                        Case Number: 2:11-CV-14037

v.                                          HONORABLE DENISE PAGE HOOD

KENNETH ROMANOWSKI,

                Respondent.

_____/

### OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Michigan state prisoner Darrett King has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner, who is currently incarcerated at the Thumb Correctional Facility in Lapeer, Michigan, challenges his convictions for two counts assault with intent to murder, possession of a firearm during the commission of a felony, and felon in possession of a firearm.  Respondent argues that the petition should be denied because the claims are procedurally defaulted and/or meritless.  For the reasons discussed, the Court denies the petition.

**I.**      **Facts**

The Michigan Court of Appeals provided a factual overview of the case, which is presumed correct on habeas review, *see Monroe v. Smith*, 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001), aff'd. 41 F. App'x 730 (6th Cir. 2002), as follows:

On December 24, 2004, Emmanuel El-Amin and Roy Washington were

assaulted by two men while they were outside at a gas station on the southeast corner of 7 Mile and Patton Street in Detroit. As Washington tried to run away from the attackers, one of the assailants fired what appeared to be a semi-automatic firearm at him and the other assailant followed him on foot on 7 Mile. When El-Amin exited his car, the assailant who had followed Washington on foot down 7 Mile, turned and shot at El-Amin, hitting him. El-Amin testified that he then watched the shooter flee north across 7 Mile onto Patton, where he saw the shooter overtaken and arrested by police officers. He testified that he did not lose sight of the shooter during the incident. The man was brought to El-Amin shortly afterwards and El-Amin identified him as the person who had shot him. Some days later, El-Amin was asked to pick his assailant from a photo lineup, but he failed to identify defendant.

Detroit Police Officer Jason Neville testified that he was on duty on the night in question, driving his patrol car westbound on 7 Mile when he heard gunshots. He testified that he saw two people running toward his patrol car, with two other people running after them with handguns, firing shots. He stopped the car on 7 Mile and got out to chase the shooters. When Neville began to close the distance between himself and defendant, defendant gave up and was arrested. Defendant was released shortly thereafter.

In 2008, Detroit Police Officer Michael Carlisle was investigating an unrelated unsolved case for which he considered defendant a suspect. Carlisle searched the Detroit Police Department computer base and discovered that defendant had been arrested for the assaults on El-Amin and Washington, but never charged. He contacted El-Amin and Washington and tracked down a report of a gunshot residue test performed at the time of the shooting. He discovered that the residue test had shown that defendant had fired a gun. An arrest warrant was issued, and Carlisle then went to serve defendant who was in prison on unrelated charges.

*People v. King*, No. 291037, 2010 WL 5373865 (Mich. Ct. App. Dec. 28, 2010).

## II.   Procedural History

Petitioner was convicted by a Wayne County Circuit Court jury of two counts of

assault with intent to murder, felony firearm, second conviction, and felon in possession

of a firearm. On February 4, 2009, he was sentenced to 171 to 300 months in prison for

2

each count of assault with intent to murder, two to five years in prison for the felon-in-possession conviction, and five years in prison for the felon-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising these claims:

    I.    The prosecutor presented insufficient evidence to support a finding that defendant King was guilty beyond a reasonable doubt of assault with intent to murder and the resulting conviction based on insufficient evidence denied Petitioner the right to due process.

    II.    The Detroit Police Crime Laboratory destroyed the gunshot residue test-kit where trial testimony indicated that the Crime Lab had a 10% error rate and the Crime Lab's test results constituted a substantial reason for Defendant King's convictions.

    III.    Defendant King was denied due process by the introduction of unnecessarily suggestive identification testimony which was outcome determinative to the conviction and should have been suppressed.

    IV.    The trial court's instruction, when viewed as a whole, failed to inform the jury as to the inferences to be drawn from destroyed evidence and shifted the burden of proof on the element of intent necessary to support the conviction for assault with intent to murder.

    V.    Defendant King was denied the effective assistance of counsel at trial.

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. King*, No. 291037, 2010 WL 5373865 (Mich. Ct. App. Dec. 28, 2010).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. King*, 489 Mich. 935 (2011).

Petitioner then filed the pending habeas petition. He raises the same claims raised

3

in state court.

## III.    Standard

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996

(AEDPA), Pub.L. No. 104–132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case,

"circumscribe[d]" the standard of review federal courts must apply when considering an

application for a writ of habeas corpus raising constitutional claims, including claims of

ineffective assistance of counsel.  *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  As

amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state

court decision on a federal issue "was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court," or it

amounted to "an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2); *Franklin v.

Francis*, 144 F.3d 429, 433 (6th Cir.1998).  Under that review standard, mere error by the

state court does not justify issuance of the writ; rather, the state court's application of

federal law "must have been objectively unreasonable."  *Wiggins*, 539 U.S. at 520–21

(*quoting Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)).

Additionally, this Court must presume the correctness of state court factual

determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for

a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a

determination of a factual issue made by a State court shall be presumed to be correct.");

*see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir.1996) (stating that "[t]he court gives

4

complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases....
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405–06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court has explained that an unreasonable application of federal law is different from an incorrect application of federal law. Under that language, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. The Supreme Court has continued to emphasize the limited nature of this review. In its recent unanimous decision in *Harrington v. Richter*, 562 U.S. —, 131 S.Ct. 770 (2011), the Court reiterated that the AEDPA requires federal habeas courts to review state court

decisions with "deference and latitude," and "[a] state court's determination that a claim lacks merit precludes habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 785–86 (*quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## IV. Discussion

### A. Sufficiency of the Evidence

In his first habeas claim, Petitioner argues that insufficient evidence was presented to establish beyond a reasonable doubt his identity as the shooter.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319 (emphasis in original). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16).

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010), *citing Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)). First, the Court "must determine whether,

6

viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205, *citing Jackson,* 443 U.S. at 319).  Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

 Under Michigan law, the elements of "assault with intent to commit murder are (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v. Plummer*, 581 N.W.2d 753, 759 (1998). The actual-intent-to-kill element does not need to be proved by "direct, positive, or independent evidence." *People v. Taylor*, 422 Mich. 554, 375 N.W.2d 1, 7 (1985) (internal quotation marks omitted).  Rather, the intent may be shown by inference from any fact in evidence, provided that the inference is reasonable.  *Id.* at 8.   "The elements of felon in possession of a firearm in Michigan are (1) that the defendant was convicted of a felony, (2) that the defendant possessed a firearm, and (3) that at the time of possession less than three or five years, depending on the underlying felony, has passed since the defendant had completed his term of incarceration, satisfied all conditions of probation and parole, and paid all fines." *Parker v. Renico*, 450 F.Supp.2d 727, 733 (E.D. Mich. 2006) (Cohn, J.), aff'd, 506 F.3d 444 (6th Cir.2007).  "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v. Avant*, 235 Mich.App. 499, 504 (1999).

The Michigan Court of Appeals denied Petitioner's sufficiency of the evidence claim, reasoning as follows:

> Defendant first argues that there was not sufficient evidence to support his assault with intent to murder conviction. We review questions of sufficiency of evidence de novo, taking all of the evidence presented at trial and resolving all questions of weight and credibility in favor of the prosecution, to "determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v. Wolfe*, 440 Mich. 508, 515; 489 NW2d 748 (1992).
>
> Defendant makes much of the fact that neither El-Amin nor Washington saw the face of either of the assailants. However, El-Amin testified that he watched the man who shot at him chased and apprehended by a police officer. Neville testified that the man he apprehended, defendant, was one of the two people he saw running and firing shots as Neville was driving on 7 Mile. Moreover, there was expert testimony that defendant's left glove showed evidence that he had fired a gun. In addition, Washington identified defendant at trial as one of the assailants.[1] Based on this evidence, a rational trier of fact could find beyond a reasonable doubt that defendant was the shooter.
>
> _____
> [1] Washington explained that defendant's mask did not fit properly and that he was able to identify defendant by his eyes and his coloring.

*King*, 2010 WL 5373865 at *1-2.

When assessing a sufficiency of the evidence claim on habeas review, the Court may not re-weigh evidence or redetermine witness credibility. *Marshall*, 459 U.S. at 434. Assuming the jury found El-Amin's testimony that he saw the man who shot at him get chased and apprehended by a police officer and Officer Neville's testimony that Petitioner was one of the two people he saw running down the street and firing his weapon to be credible, this testimony was sufficient for a rational trier of fact to find the

elements of each of the crimes of conviction.  The Michigan Court of Appeals' decision was not an unreasonable application of *Jackson*.

## B.    Destruction of Evidence

Next, Petitioner argues that his right to due process was violated because the police failed to preserve a gunshot residue test kit.

The Due Process Clause requires that the State disclose to criminal defendants "evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed."  *California v. Trombetta*, 467 U.S. 479, 485 (1984).  "Separate tests are applied to determine whether the government's failure to preserve evidence rises to the level of a due process violation in cases where material exculpatory evidence is not accessible, *see Trombetta*, 467 U.S. at 489, versus cases where 'potentially useful' evidence is not accessible.  *See Arizona v. Youngblood*, 488 U.S. 51, 58 109 S. Ct. 333, 102 L. Ed.2d 281 (1988)."  *United States v. Wright*, 260 F.3d 568, 570-71 (6th Cir. 2001). A defendant's due process rights are violated where material exculpatory evidence is not preserved.  *Trombetta*, 467 U.S. at 489.  For evidence to meet the standard of constitutional materiality, it "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."  *Id.* at 488-89.  The destruction of material exculpatory evidence violates due process regardless of whether the government acted in bad faith. *See id.* at 488; *Youngblood*, 488 U.S. at 57.

However, "the Due Process Clause requires a different result when . . . deal[ing]

9

with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Youngblood*, 488 U.S. at 56.  "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Id. at 58.  A habeas petitioner has the burden of establishing that the police acted in bad faith in failing to preserve potentially exculpatory evidence. *See Malcum v. Burt*, 276 F. Supp. 2d 664, 683 (E.D. Mich. 2003).

The last state court to issue a reasoned opinion regarding this claim, the Michigan Court of Appeals, held that Petitioner's rights were not violated because the evidence was not preserved.  The state court applied the standard articulated in *Youngblood* and held that Petitioner failed to show that the police acted in bad faith or that the evidence was exculpatory.  The Court of Appeals reasoned:

> *Citing Brady v. Maryland*, 373 U.S. 83; 83 S Ct 1194; 10 L.Ed.2d 215 (1963), defendant next argues that his due process rights were violated when the trial court allowed testimony as to the results of the gunshot residue testing, even though the evidence itself had been destroyed.
>
> In order to establish a Brady violation, a defendant must prove: (1) that the state possessed evidence favorable to the defendant; (2) that the defendant did not possess the evidence nor could the defendant have obtained it with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.  [*People v. Cox*, 268 Mich.App 440, 448; 709 NW2d 152 (2005), *citing Brady*, 373 U.S. at 87.]
>
> Defendant cannot make the first or fourth required showings.  There was no evidence showing that the gunshot residue kit would have been favorable to defendant.  Expert testimony indicated that the test showed that defendant

had fired a gun.  Moreover, even if the evidence had been retested and
given a negative result, the residue expert testified that a negative test result
is not evidence of not having fired a gun; it is simply absence of evidence.
[] Defendant therefore cannot show that this was exculpatory evidence that
would raise a reasonable probability of a different trial result.

A different standard applies when a defendant argues a due process
violation based on destruction of evidence that merely might have been
exculpatory.  *Arizona v. Youngblood*, 488 U.S. 51; 109 S Ct 333; 102
L.Ed.2d 281 (1988).  In such a case, the defendant bears the burden of
showing bad faith on the part of the police. Id. at 58. Defendant points to no
evidence supporting a finding that the Detroit Police Department destroyed
this evidence in a bad faith effort to keep it from being retested, or to keep it
from defendant.

Because defendant cannot show either that the evidence would have been
exculpatory, or that it was destroyed in bad faith, he cannot show a due
process violation based on its destruction.

*King*, 2010 WL 5373865 at *2.

This decision is neither contrary to Supreme Court precedent nor an unreasonable

application of federal law or the facts.  Petitioner has not shown that the gunshot residue

kit would have been exculpatory.  The record is devoid of evidence that the police or

prosecution authorities acted in bad faith – a necessary requirement to establish a

constitutional violation where the destroyed evidence was only potentially useful to the

defense.  Given such circumstances, Petitioner has failed to establish a constitutional

violation.  Habeas relief is not warranted.

### C.    Identification Testimony

Petitioner challenges the trial court's decision allowing El-Amin's in-court

identification of Petitioner.  Petitioner argues that it was only after El-Amin was told he

11

identified the wrong person that he then identified Petitioner as the shooter.   Respondent

argues that this claim is procedurally defaulted.

Federal habeas relief is precluded on claims that a petitioner has not presented to

the state courts in accordance with the state's procedural rules.  *See Wainwright v. Sykes*,

433 U.S. 72, 85-87 (1977).  The doctrine of procedural default is applicable when a

petitioner fails to comply with a state procedural rule, the rule is actually relied upon by

the state courts, and the procedural rule is "adequate and independent."  *White v. Mitchell*,

431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th

Cir. 2005); *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001).  The last explained

state court judgment should be used to make this determination.  *See Ylst v. Nunnemaker*,

501 U.S. 797, 803-05 (1991).  If the last state judgment is a silent or unexplained denial,

it is presumed that the last reviewing court relied upon the last reasoned opinion.  *Id.*

The last state court to address this claim, the Michigan Court of Appeals, held that

the issue was not preserved for review because Petitioner acknowledged that the

testimony was admissible.  The Michigan Court of Appeals' holding rested upon a

recognized, independent and adequate state law ground for refusing to review alleged trial

errors.  *See People v. Carter*, 462 Mich. 206 (2000).  A state prisoner who fails to comply

with a state's procedural rules waives the right to federal habeas review absent a showing

of cause for noncompliance and actual prejudice resulting from the alleged constitutional

violation, or a showing of a fundamental miscarriage of justice.  *See Coleman v.*

*Thompson*, 501 U.S. 722, 750-51 (1991); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir.

12

2007); *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).

Petitioner does not allege cause to excuse the default of his defaulted claims. Habeas review is therefore barred unless he can show that failure to consider this claim would result in a fundamental miscarriage of justice. The Supreme Court explicitly has tied the miscarriage of justice exception to procedural default to a petitioner's innocence. *Schlup v. Delo*, 513 U.S. 298, 321 (1995). A valid claim of actual innocence requires a petitioner "to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness account, or critical physical evidence – that was not presented at trial." *Id.* at 324. "The *Schlup* standard is demanding and permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006) (citation omitted). To make a showing of actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt." *Id.* at 327. Petitioner fails to present new, reliable evidence in light of which no reasonable juror would have found him guilty. Accordingly, this claim is procedurally defaulted.

### D.    Jury Instructions

Petitioner argues that improper jury instructions denied him his right to a fair trial. First, he argues that the trial court improperly denied his request for an adverse inference instruction regarding the destruction of the gunshot residue kit. Second, he argues that the improperly shifted the burden of proof on the intent element of assault with intent to commit murder.

13

Generally, claims of erroneous jury instructions are not cognizable in federal habeas review unless the instruction "'so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). "Before a federal court may overturn a conviction resulting from a state trial in which this instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v. Naughten*, 414 U.S. 141, 146 (1973). It is not enough to show that the instruction was incorrect under state law. *Estelle v. McGuire*, 502 U.S. at 71-72. The instruction "may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Id.* at 147. "To warrant habeas relief, jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair." *Doan v. Carter*, 548 F.3d 449, 455 (6th Cir.2008) (*quoting Austin v. Bell*, 126 F.3d 843, 846-47 (6th Cir.1997) (internal quotation marks omitted)). "When a court makes an error in instructing the jury, the proper inquiry is 'whether there is a reasonable likelihood that the jury' applied the instruction 'in an unconstitutional manner.'" *Id*. at 455 (*quoting Victor v. Nebraska*, 511 U.S. 1, 6 (1994)).

Under Michigan law, an adverse inference instruction based on police destruction of evidence is appropriate only when the police acted in bad faith. *Bailey v. Smith*, 492 F. App'x 619 (6th Cir. July 24, 2012); *People v. Davis*, 199 Mich. App. 515 (Mich. Ct. App. 1993). Here, the Michigan Court of Appeals held that, because no bad faith was shown,

14

the trial court was correct in denying the requested adverse inference instruction.

Petitioner has not shown that the finding that police did not act in bad faith was

unreasonable or clearly erroneous and has failed to show that the absence of an adverse

inference instruction so infected the entire trial as to violate due process.

Next, Petitioner argues that the jury instructions improperly shifted the burden of

proof to the defense for the intent element of assault with intent to murder.  Specifically,

Petitioner objects to the underlined portion of the following instruction:

> You must think about all the evidence in deciding what the defendant's
> state of mind was at the time of the alleged assault.
>
> The defendant's state of mind may be inferred from the kind of weapon
> used, the type of wounds inflicted, the acts and words of the defendant and
> any other circumstances surrounding the alleged assault.
>
> You may infer that the defendant intended to kill if he used a dangerous
> weapon in the way that was [likely] to cause death.  Likewise, <u>you may
> infer that the defendant intended the usual result that follows from the use
> of a dangerous weapon</u>.  And a gun is a dangerous weapon.

Tr., 2/3/09 at 109.

The Michigan Court of Appeals held:

*Citing People v. Richardson*, 409 Mich. 126; 293 NW2d 332 (1980),
defendant argues that the jury instruction related to this element violated his
due process by impermissibly shifting the burden of proof. *See People v.
Brown*, 267 Mich.App 141, 148–149; 703 NW2d 230 (2005).  The
instruction in issue in Richardson read in relevant part as follows:

> "If a man kills another suddenly and without provocation, the
> law implies malice and the crime is murder. If the provocation
> is sufficient ..., the killing would be manslaughter.

> "The instrument with which the killing was done will be taken into consideration by you because the intention to kill in the absence of evidence showing a contrary intent may be inferred by [sic] the use of a deadly weapon in such a manner that the death of the person assaulted would be an inevitable consequence."

[*Id.* at 142 (emphasis omitted; mistakes noted by *Richardson*).]

*Richardson* clearly indicates that the improper language was not the portion instructing that "the intention to kill ... may be inferred by the use of a deadly weapon," but rather the qualification, "in the absence of evidence showing a contrary intent." *Id.* at 44. *See also People v. Wright*, 408 Mich. 1, 25; 289 NW2d 1 (1980).

The error in *Richardson*, then, was not that the jury was instructed that it may infer intent to kill from the use of a deadly weapon, but that that inference was to be made "in the absence of evidence showing a contrary intent," implying a burden on defendant to produce evidence to avoid such an inference. *See Wright*, 408 Mich. at 24. Thus, the error was not that the jury was instructed that it may infer intent from the use of a deadly weapon, but that that inference was to be made in the absence of contrary evidence. In the case at hand, the portion of the instruction challenged does not make a similar error. The instruction indicated that intent may be inferred from defendant's use of a dangerous weapon, but it did not transform the permitted inference into a presumption by indicating that it can be reached in the absence of opposing evidence.

*King*, 2010 WL 5373865 at *4.

In a criminal trial, "it is an elementary principle of due process that every element of the crime must be proven by the prosecution beyond a reasonable doubt." *Caldwell v. Bell*, 288 F.3d 838, 841 (6th Cir. 2002), *citing Sandstrom v. Montana*, 442 U.S. 510, 520 (1979). An instruction that tells a jury to presume any element of a crime without evidence is unconstitutional, because "the Fourteenth Amendment's guarantees prohibit a State from shifting to the defendant the burden of disproving an element of the crime

16

charged." *Sandstrom,* 442 U.S. at 527 (Rehnquist, J., concurring).  However, a

*permissive* inference does not suffer from a similar constitutional infirmity.  "A

permissive inference does not relieve the State of its burden of persuasion because it still

requires the State to convince the jury that the suggested conclusion should be inferred

based on the predicate facts proved."  *Francis v. Franklin*, 471 U.S. 307, 314 (1985).

In this case, the challenged language created only a permissive inference.

Therefore, the Michigan Court of Appeals conclusion that the instruction did not

improperly shift the burden of proof was not an unreasonable application of *Sandstrom.*

### E.      Ineffective Assistance of Counsel Claim

Finally, Petitioner asserts several ways in which counsel was allegedly ineffective. Specifically, Petitioner alleges counsel was ineffective in: (i) failing to move to suppress references to uncharged bad acts or other investigations by Petitioner by police officer Michael Carlisle; (ii) failing to move for retesting of gunshot residue evidence and suppression of ballistics evidence; (iii) failing to move to suppress evidence of Petitioner's prior felony convictions; (iv) failing to object to the questioning of Petitioner on cross-examination regarding his involvement in an unrelated, unsolved case; and (v) failing to object to jury instructions.

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply

18

reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

"Surmounting *Strickland*'s high bar is never an easy task," *Padilla v. Kentucky*, __ U.S. __, 130 S. Ct. 1473, 1485 (2010), as the Supreme Court explained in *Harrington*:

> [T]he *Strickland* standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S. at 689-90. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. . . . The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S. at 690.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at —, 129 S.Ct.

at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at —, 129 S.Ct. at 1420.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

131 S. Ct. at 788.

First, Petitioner argues that counsel was ineffective in failing to move to suppress any testimony from police officer Michael Carlisle related to another homicide investigation.  Officer Carlisle testified that he became interested in Petitioner when investigating the unsolved murder of Tamara Green, an exotic dancer who had reportedly been murdered after dancing at a rumored party at Detroit's mayoral mansion.  Officer Carlisle considered King a suspect in that murder.  The Michigan Court of Appeals denied this claim, finding:

> Counsel could have reasonably believed that by spotlighting the unrelated, unsolved case, the jury might come to believe that Carlisle was driven by his desire to solve the unsolved case, not by a desire to bring the true assailants of El-Amin and Washington to justice.  Defendant also portrayed himself as a successful drug dealer.  Out of context this might not seem like sound trial strategy.  However in the context of the charges brought, it would be reasonable to try to show that defendant would have no financial motive to commit the crimes.  We will not presume to substitute a different judgment for defense counsel in matters of trial strategy.

*King,* 2010 WL 5373865 at *5.

In considering whether counsel's failure to move to suppress this testimony fell within the "wide range of reasonable professional assistance," the Court is mindful that there are "countless ways to provide effective assistance in any given case. Even the best

20

criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689.  The fact that Petitioner's defense was ultimately unsuccessful does not render counsel's performance ineffective.  *Hodges*, 711 F.3d at 608-09.  Defense counsel's strategy was a reasonable attempt to provide a motive for the police's focus on Petitioner.  Thus, the state court's conclusion that defense counsel was not ineffective was not contrary to or an unreasonable application of *Strickland*.  Because Petitioner fails to satisfy *Strickland*'s first prong, the Court need not consider the prejudice prong.  *Id.* at 697.  *See also Stanford v. Parker*, 266 F.3d 442, 454 (6th Cir. 2001) ("*Strickland* specifically holds that the two prongs of its test need not be applied in order or in totality.").

Next, Petitioner argues that counsel was ineffective for failing to move for a retesting of the gunshot residue evidence and suppression of the ballistics evidence.  The Michigan Court of Appeals held that a request to retest the gunshot residue evidence would have been futile because the evidence was destroyed.  The state court also held that an objection to the chain of custody of the ballistics evidence would have been futile because the testimony showed no problems with the chain of custody.  Counsel cannot be deemed ineffective for failing to raise a meritless objection.  *See Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir.2006).  Therefore, the state court's opinion was not a reasonable application of *Strickland*.

Petitioner argues that counsel was also ineffective in failing to object to the prosecutor's questioning Petitioner regarding his prior felony convictions.  The Michigan

21

Court of Appeals held that, even assuming that the questions were improper, Petitioner was not prejudiced by counsel's failure to object.  The reference to Petitioner's prior convictions was very brief and was not used by the prosecutor to imply Petitioner's guilt in this case.  Therefore, the Court finds that the state court's opinion was not inconsistent with clearly established Supreme Court precedent.  *Id*.

Petitioner argues that counsel was further ineffective in failing to object when the prosecutor cross-examined him regarding his involvement in the unrelated, unsolved murder of Tamara Green.  The Michigan Court of Appeals held that counsel was not ineffective in failing to object because the testimony was properly elicited in an attempt to impeach Petitioner's credibility.  On habeas review, a state court will not second-guess a state court on the admissibility of evidence.  *See Davis v. Morgan*, 89 F. App'x 932, 936 (6th Cir. 2003).  Because the state court held that this testimony was properly elicited, Petitioner cannot show that his attorney was ineffective in failing to object to its admission.

Finally, Petitioner argues that counsel was ineffective in failing to object to jury instructions which, he claims, shifted the burden of proof.  As discussed above, the jury instructions were not improper.  Therefore, counsel was not ineffective in failing to object.

## V.       Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of

22

the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court will deny a certificate of appealability.

**VI.    Conclusion**

For the foregoing reasons, the petition for a writ of habeas corpus and a certificate

of appealability are **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**IT IS ORDERED**.


S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  July 31, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record
on July 31, 2013, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager